# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PHILLIP CROW and ALLISON CROW,

    Plaintiffs,

vs.                                                    CASE NO. CV-07-J-1742-NE

NATIONWIDE PROPERTY &
CASUALTY INSURANCE
COMPANY,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's amended motion for summary judgment, memorandum of law and evidence in support of said motion (docs. 18 and 19), to which the plaintiffs filed a response and evidence in opposition (docs. 22 and 23) and the defendant thereafter filed a reply (doc. 24).

### I.  Procedural History

Plaintiffs commenced this action on August 28, 2007, by filing a complaint in the Circuit Court for Lawrence County, Alabama, alleging claims for breach of contract, mental anguish and bad faith refusal to pay arising out of losses the plaintiffs sustained when fire destroyed their home.  Defendant removed the case to this court based on diversity jurisdiction (doc. 1).

## II. Factual Background

The plaintiffs' residence was insured by defendant through a contract of insurance with effective dates of September 17, 2006, to September 17, 2007. Defendant exhibit 1. On or about October 19, 2006, the residence was destroyed by fire. Complaint, ¶ 5; defendant exhibit 5. On October 21, 2006, defendant provided the plaintiffs with "Instructions to Nationwide Homeowner Policyholders," which plaintiff Phillip Crow signed. Defendant exhibit 3. Those instructions included the following:

> If your policy provides replacement cost coverage you are required to file proper documentation of the replacement and make claim for the amount of difference between the actual cash value payment and the actual repair cost incurred within (180) days from the date of loss.

Defendant exhibit 3, p. 1, ¶ 6. Those instructions also set forth, with regard to personal property, that:

> If your policy provides replacement cost coverage you are required to make replacement, furnish documentation of same, and make claim for the amount of difference between the ACV and the actual amount spent for replacement. **We will not pay more than the actual cash value of the damaged or stolen property until it has been repaired or replaced**.

Defendant exhibit 3, p. 2, ¶ 4 (emphasis in original).

On February 15, 2007, the defendant sent the plaintiff a payment of $45,000.00, as the actual cash value of the residence as determined by appraisal. Defendant exhibits 6 and 7. Because the plaintiffs disputed this amount, they did not

cash this check. P. Crow depo. at 81-82. The February 15, 2007, letter further informed the plaintiffs that the replacement cost of their home was determined to be $103,298.00, leaving $58,298.00 available to the plaintiffs for replacement. Defendant exhibit 7. The letter also stated that should they choose not to rebuild their home, no further payments would be owed on the claim. *Id*. A check for $2,527.76 was also inclosed as a "dwelling demolition advance check." *Id*.

By affidavit, plaintiff Phillip Crow asserts that he disputes the defendant's computation of the "actual cash value" of the home. He asserts the proper actual value of the house on the date of the fire was $100,500.00. Phillip Crow affidavit, submitted as plaintiff exhibit 3. The basis for this opinion is that "[b]ased upon my familiarity with the construction/remodeling/refurbishing the dwelling and having resided in the dwelling as well as the community in which my house was located, I have had adequate opportunity to form an opinion as to the value dwelling (sic) and the property upon which it is situated." *Id*, at 3. Plaintiff Allison Crow provides a similar opinion, also by affidavit. Allison Crow affidavit, submitted as plaintiff exhibit 4. The plaintiffs both assert that their opinions are based on defendant's providing coverage on the dwelling in the amount of $100,500.00. P. Crow affidavit, at 2; A.Crow affidavit, at 2. There is no evidence that the plaintiffs ever obtained an appraisal which disputed the amount of $45,000.00 as the cash value of the home. The plaintiff did submit a proof of loss form to the defendant on February 22, 2007,

claiming a loss of $174,905.00.[1]  Defendant exhibit 5.

On March 16, 2007, defendant sent the further sums of $2,647.99 and $524.25 for costs incurred in completing the demolition of the house.  Defendant exhibit 8. An additional check for damaged personal property, in the amount of $54,481.75, was sent to the plaintiffs on March 30, 2007.  Defendant exhibits 11 and 12. The plaintiffs were informed that the amount represented the actual cash value of these belongings, but should the plaintiffs replace the items in question, and provide defendant with receipts for these expenditures, the plaintiffs would be entitled to the additional sum needed to equal replacement costs.  *Id*.

On May 8, 2007, the plaintiffs, through their attorney, informed the defendant that they did not intend to rebuild their home.  Defendant exhibit 13.  However, plaintiffs made a demand for the cost to replace their home.  *Id*.  The defendant instructed the plaintiffs, again through their attorney, that "the policy provides for replacement of the property before they would be entitled to replacement cost benefits."  Defendant exhibit 16.  On July 30, 2007, the plaintiffs notified the defendant that they had found a house to purchase, and that they sought payment of $100,500.00 for policy coverage and the hold back coverage on the contents in the amount of "about $20,000.00." Defendant exhibit 14. On August 2, 2007, defendant notified the plaintiffs that, pursuant to the terms of their insurance policy, the

---

[1]The court notes this amount is simply what the plaintiffs calculated to be the total amount of insurance on the property.  *See* defendant exhibit 5.

plaintiffs had to replace the property (their house) prior to any further payment being made. Defendant exhibit 15. Plaintiffs allege this letter of August 2, 2007, is a denial of the plaintiffs' claims for loss of the building and its contents. Complaint, ¶ 8.

Plaintiff Phillip Crow stated that they never purchased a new house. P. Crow depo., at 29-30. They also have not rebuilt the house that was destroyed. P. Crow depo. at 17. The plaintiffs understood that to receive replacement cost coverage, the plaintiffs had to actually replace items lost. P. Crow depo. at 27, 32; A. Crow depo. at 34, 37. However, the plaintiffs never provided the defendant with any receipts. P. Crow depo. at 43-44, 47. The plaintiffs have also never notified defendant that they disagreed with calculations for the actual cash value of the contents. P. Crow depo. at 43.

## II. Standards for Evaluating a Summary Judgment Motion

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts

and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. Legal Analysis

*Breach of Contract*

The plaintiffs state that "[i]f the basis of the breach of contract was Nationwide's failure to pay the dwelling's replacement cost, then summary judgment would be appropriate. However, this is not the basis for the breach of contract claim." Plaintiffs' response, at 3. Rather, the plaintiffs assert their breach of contract claim is based on defendant's failure to pay "the correct actual cash value of the dwelling on the date of loss ..." *Id.* However, the plaintiffs never notified defendants that they disputed the actual cash value paid by defendants. P. Crow depo. at 67; A. Crow depo. at 42. Both plaintiffs also testified that they understood the defendant had paid the actual cash value and would pay the replacement value if they replaced their home. P. Crow depo. at 84; A. Crow depo. at 43.

The plaintiffs argue that because they "gutted the house and everything was new, even the wiring," the house was worth more than the appraised amount obtained by defendant. Plaintiffs' response, at 3. However, the plaintiffs have produced no

7

evidence, other than their own affidavits, in support of this argument. Philip Crow testified during his deposition that he did not understand how "actual cash value" was calculated. P. Crow depo. at 55-56. He further could not state what the tax value of his home was prior to the fire. P. Crow depo. at 101-102.

The plaintiffs direct the court's attention to *State Farm Fire and Casualty Co. v. Williams*, 926 So.2d 1008 (Ala.2005), for the proposition that the rule in Alabama is that any person, including a layman, is competent to testify as to his opinion concerning the value of a house and property, if he has had an opportunity to form a correct opinion. Plaintiffs' response, at 5. The case in question does contain this language, but then notes this comes from *Mississippi Valley Title Insurance Co. v. Malkove*, 540 So.2d 674 (Ala.1988). *Williams*, 926 So.2d at 1017. In *Malkove*, the court noted that the two individuals who testified as to the value of the land there in question were licensed real estate brokers in the business of developing and selling commercial real estate. *Id*. 540 So.2d at 679. The *Malkove* Court concluded that "[t]here was sufficient evidence for the trial court to conclude that Mr. Malkove and Mr. Forwood were experts in real estate, or in the alternative, that they were non-experts who had had an opportunity to form a correct opinion as to the value of Tract B." *Id*., 540 So.2d at 679-680. With this background, the court in *Williams* found "the facts of *Malkove* are easily distinguishable from the facts of this case....Accordingly, we conclude that the Williamses failed to present substantial

evidence of an essential element of their breach-of-contract claim..." *Williams* 926 So.2d at 1017-1018.

Given Phillip Crow's testimony that he did not understand how actual cash value was calculated, the court finds his affidavit concerning that actual cash value of his home is not sufficient to establish him as a "non-expert[] who had had an opportunity to form a correct opinion as to the value of [the property]." *Malkove*, 540 So.2d at 679-680. Hence, the affidavit is not sufficient evidence to survive summary judgment. Similarly, when asked about the value of their home, plaintiff Allison Crow testified as follows:

> Q. Okay. So other than just what you looked around at, that's the only way you came up with the actual cash value of your house; is that correct?
> A. No. Joe Sellers[2] –
> Q. At the time of the fire?
> A. Joe Sellers come out and told us that our home could not be replaced for the insurance that we had. And I have trusted him. He has always been a good friend, and I trusted him. I trusted his word.
> Q. My question is he told you it could not be replaced, and so he increased the insurance to cover the replacement of it; correct?
> A. Right.
> Q. Okay. But he never told you what the actual cash value of your house was, did he?
> A. Yeah, he said it was over a $100,000 home.
> Q. To replace it; correct?
> A. Yeah, to replace it.

A. Crow depo. at 62-63. Given Allison Crow's testimony as to the cost to replace the

---

[2]Joe Sellers was the plaintiffs' insurance agent.

home, the court is of the opinion that her affidavit otherwise contradicts her deposition testimony. Again, the affidavit is not sufficient to survive summary judgment on the breach of contract claim.

The plaintiffs also allege in their response that they attempted to get an appraisal from four different sources, but were told an appraisal could not be done on a residence that was a total loss. Plaintiffs' response, at 3; P. Crow depo. at 57-58. Again, the plaintiffs have provided the court with no evidence of this allegation. The mere allegations of the plaintiff are not sufficient to defeat a motion for summary judgment. Such allegations, standing alone, do not create a genuine issue for trial. See e.g., *Eberhardt,* 901 F.2d at 1580.

The plaintiffs do not claim that the appraisal that was done contained improper information, such as square footage, number of bedrooms or bathrooms, kitchen equipment, etc. Rather, they just state that their home was worth more.[3] The plaintiffs admit they never provided defendant with any documentation to support a claim that actual cash value of the home was more than $45,000.00, or that they even disagreed with the appraisal. P. Crow depo. at 58, 62-64; A. Crow depo. at 44-45, 52-53.

The plaintiffs assert that the fact that defendant increased coverage on the dwelling to $100,500.00 is evidence that such sum was the actual cash value of their

---

[3]The plaintiffs do not address the fact that the appraiser discounted the value of the home due to the fact it shared property with another home. *See* defendant exhibit 6, at 0081.

house. Plaintiffs' response, at 3. Even if there was some basis in logic to this assertion, the plaintiffs have failed to provide the court any evidence or cite the court to any source which supports an allegation that insurance coverage on a dwelling is automatically equivalent to the actual cash value of that dwelling.[4] In his deposition, plaintiff Phillip Crow testified that he understood the replacement cost of his house was $103,298.00, and that to recover the difference between replacement cost and the $45,000.00 amount defendant paid, he would have to rebuild the house. P. Crow depo. at 53-54, 82-83.

The plaintiffs also assert that, in regard to the replacement cost of personal property, the contract required only notice of intent to replace items within 180 days of the loss, and not actual replacement. Plaintiffs' response, at 6-7. The plaintiffs were informed by defendant that although their policy provided replacement cost coverage, to receive such sums:

> you are required to make replacement, furnish documentation of same, and make claim for the amount of difference between the ACV and the actual amount spent for replacement. **We will not pay more than the actual cash value of the damaged or stolen property until it has been repaired or replaced**.

Defendant exhibit 3, p. 2, ¶ 4 (emphasis in original). As of the date of plaintiff

---

[4] The plaintiffs assert their claims are supported by the definition of "actual cash value." The policy defines that term as "the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence." Defendant exhibit 1, at 0469. During his deposition, Phillip Crow testified he did not understand the term "actual cash value." P. Crow depo. at 55-56.

Phillip Crow's deposition, approximately 15 months after the fire, the plaintiffs had yet to provide the defendant with any receipts for replacement of anything.  P. Crow depo. at 43-44, 73, 89.

*Mental Anguish*

The plaintiffs assert that because the defendant's contractual duty was "so coupled with matters of mental concern or solicitude," the plaintiffs are entitled to damages for mental anguish stemming from the defendant's breach of the contract. Plaintiffs' response at 7.  Clearly, numerous cases have allowed damages for mental anguish stemming from "contracts for the repair or construction of a house or dwelling or the delivery of utilities thereto, where the breach affected habitability." *Baldwin v. Panetta,* 2008 WL 4277343, *11 (Ala.Civ.App.2008); citing *Liberty Homes, Inc. v. Epperson,* 581 So.2d 449, 454 (Ala.1991); *Orkin Exterminating Co. v. Donavan*, 519 So.2d 1330 (Ala.1988); *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297 (Ala.1986); *Alabama Power Co. v. Harmon*, 483 So.2d 386 (Ala.1986). Assuming, without deciding, that this case presents a factual situation which is within the parameters of the above cited cases, the plaintiffs must first establish a breach of the contract in question before they can recover any damages stemming therefrom, mental anguish or otherwise.  Because the court finds that the plaintiffs have failed to produce evidence sufficient to avoid summary judgment against them on their breach of contract claim, the plaintiffs cannot recover any damages on that claim.

*Bad Faith*

The plaintiffs concede that the defendant is entitled to judgment in its favor on the plaintiffs' claim for bad faith.  Plaintiffs' response, at 1.

## IV.  Conclusion

This court having considered all of the evidence, memoranda and briefs and the court finding that no genuine issue of material fact exists and that the defendant is entitled to judgment in its favor as a matter of law, the court is of the opinion that the defendant's motion for summary judgment (doc. 18) is due to be granted on all counts of the plaintiffs' complaint.

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on the plaintiffs' complaint and judgment shall be entered in favor of the defendant and against the plaintiffs by separate order.

**DONE** and **ORDERED** this the 18th  day of February, 2009.

*/s/ Inge Prytz Johnson*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE